## 3372. MOULDER *v.* THE STATE.

Where character is put in issue, the direct examination must relate to general reputation, good or bad, as the case may be; but on cross-examination particular transactions, or statements of single individuals, may be brought into the inquiry, in testing the extent and foundation of the witness's knowledge and the correctness of his testimony on direct examination.

DECIDED JUNE 7, 1911.

Accusation of sale of liquor; from city court of Lumpkin—Judge Hickey. March 24, 1910.

*G. Y. Harrell,* for plaintiff in error.

*T. T. James, solicitor,* contra.

POWELL, J. The accused was convicted of the offense of selling liquor. He offered evidence of his general good character. On cross-examination of the witness by whom it was attempted to prove the general good character, State's counsel asked: "Do you know the reputation of Luther Moulder [the accused] for selling whisky?" The witness answered: "I can not say that I do. It seems to me (and I am not positive, but it seems) I have a faint recollection of hearing somebody say—just who made the remark, I can not now recall the name of such person, or who it was that said that Luther Moulder was illegally selling whisky. I am not positive that I heard anybody make the statement, and I will not swear positively that I did hear anybody make the remark that Luther Moulder was illegally—but it seems I have a faint recollection of hearing somebody say that the defendant had been selling whisky illegally." To this question, and to this most cautious, equivocal, and carefully guarded answer of the witness, counsel for the accused objected; but the court overruled his motion to exclude the testimony, and the exception to this ruling is the point which is presented to this court.

The State can not put the general character of the defendant in a criminal case in issue; but the accused has the privilege of showing his good character as a relevant fact tending to make his guilt doubtful. Whenever the defendant puts his good character in issue as a fact, the State has the privilege of disproving this fact, either by cross-examination of the witness by whom the accused attempts to make the proof, or by the introduction of other witnesses who testify that his general character is bad, or by both

methods. On the direct examination of such witnesses as are offered to establish character, particular transactions or the opinions or statements of individuals can not be brought in; but on cross-examination this privilege may be exercised, for the purpose of showing the extent and foundation of the witness's knowledge, or for the purpose of showing the incorrectness of his testimony on direct examination. This is the rule where impeachment of a witness on account of bad character is attempted (see Civil Code (1910), § 5882); and the same rule applies where the character of a party becomes otherwise relevant to the case. Say that the accused puts his character in issue. He, of course, produces the first witness. He will not be allowed on direct examination to ask the witness as to what he has heard particular persons say, but counsel in the examination, and the witness in his answers, will be confined to the general reputation of the accused—that is, his character generally, or, if some particular trait, such as peaceableness or violence, is involved, generally as to that trait. But when State's counsel comes to the cross-examination, he may inquire of the witness as to whom he has heard speak of the accused, as to what these persons said, and then, for the purpose of showing the incorrectness of the witness's statement that this good character which he has ascribed to the accused is general, may inquire if he has not heard particular persons speak ill of him, or if he has not known him to be accused of particular crimes, or of particular acts which would tend to detract from a man's good character in the community. "The shadings, as well as the brighter hues, are to be considered in making up the estimate of character and reputation." Ingram v. State, 67 Ala. 67, quoted approvingly in *Ozburn* v. *State*, 87 *Ga.* 173, 181 (13 S. E. 247, 248). "A man's character is made of a number of small circumstances, of which his being suspected of misconduct is one." Reg. v. Wood, 5 Jurist, 225, cited approvingly in *Ozburn* v. *State*, supra. The defendant having rested, the State may introduce character witnesses in rebuttal. In that event the direct examination of State's counsel will be circumscribed, as was the direct examination of accused's counsel in the first instance; that is, he must ask the witness as to the general bad character of the accused, or as to his general bad character as to the particular trait involved. On cross-examination, counsel for the accused will be allowed the same latitude as the State's

counsel in the first instance; that is, he may ask the witness as to the particular persons whom he has heard speak ill of the accused, and may also ask him as to the personal views expressed by particular persons, so far as he knows them.

It is said in this case that even though this may be the rule, it was not proper to ask the witness who had testified as to the general good character of the accused if he did not know that the accused had a reputation of having sold liquor illegally, because the illegal sale is not an act malum per se, and that even a man of good character may violate the law in this respect. It is pointed out that this court held in *Wheeler* v. *State,* 4 *Ga. App.* 325 (61 S. E. 409), that "proof that a witness had been convicted of the unlawful sale of intoxicating liquor affords no ground for impeachment of the witness." The proposition involved in the *Wheeler* case and the proposition involved in the present case are not identical. The fact that a person has been accused or convicted of violating the prohibition law, or any other penal law of the State, does tend in a greater or less degree to detract from his general good character; and, consequently, a witness who has testified to the general good character of a person may be asked on cross-examination if he has not heard that that person has been accused, either generally or by particular persons, of having violated the penal law. But, since general good character, or general bad character, is not primarily to be shown by proof of specific acts, and since proof that a person had been accused or convicted of selling liquor illegally would be proof of a specific act, it is not permissible for the offerer of the testimony thus to introduce proof of the specific acts; and that, of course, is what the *Wheeler* case holds. There are certain crimes, such as larceny, perjury, etc., as to which specific acts indicate such moral degeneracy as to make a conviction of one of these offenses relevant upon the question of the character of a witness, and, therefore, by a rule different from the one we are now discussing, and additional to it, the record of the conviction of a witness for one of these offenses may be proved, to discredit his testimony.

The case of *Ozburn* v. *State,* supra, clearly establishes the right of State's counsel to go into specifics on the cross-examination of a witness who has testified as to the general good character of the accused. Counsel for the plaintiff in error relies upon the earlier case of *Pulliam* v. *Cantrell,* 77 *Ga.* 563 (3 S. E.

280); but an examination of that case will show that the testimony there, as to which the Supreme Court sustained the lower court, related to a question by which the cross-examiner attempted to have the witness to state, not merely that the person in question had been charged with crime, but that he had been convicted of it, and the court merely held that conviction of crime can be shown only by the record. The *Ozburn* case states the rule very much more clearly than does the case in 77 *Ga.* 563 (3 S. E. 280), supra, and there is nothing in the case last mentioned to detract from what is held in the *Ozburn* case, which states the rule as it exists, not only in this State, but very generally throughout American and English jurisprudence. See, also, *Dotson* v. *State,* 136 *Ga.* 243 (71 S. E. 164).                                  *Judgment affirmed.*